# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JANET C. CALLAHAN,

      Appellant,

      v.

DEPARTMENT OF VETERANS
  AFFAIRS,

      Agency.

DOCKET NUMBER
CH-1221-17-0152-W-2

DATE:  December 28, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Timothy A. Bridge</u>, Esquire, Wellston, Michigan, for the appellant.

<u>Stephanie Macht</u>, Hines, Illinois, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision in this individual right of action (IRA) appeal, which granted in part and denied in part the appellant's request for corrective action.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to vacate the administrative judge's rationale for denying corrective action for a "Letter of Expectations" and to find that we lack jurisdiction over that claim, we AFFIRM the initial decision.

## BACKGROUND

The following facts, as further detailed in the record and initial decision, are undisputed. The appellant currently holds a GS-11 Social Worker position in Dubuque, Iowa, but previously held the GS-13 position of Supervisory Social Worker and Program Manager at the agency's James A. Lovell Federal Health Care Center (FHCC) in North Chicago, Illinois. *Callahan v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0152-W-2, Refiled Appeal File (RAF), Initial Decision (ID) at 2.[2]

In the years leading up to the events giving rise to this appeal, the appellant had a history of exceptional performance ratings. ID at 2. But in July 2015, several employees came together to lodge complaints about the appellant. ID at 3. In particular, one of her subordinates alleged that the appellant was

[2] To accommodate the appellant's medical needs, the administrative judge dismissed her appeal, without prejudice, for automatic refiling at a later date. Hence, the two docket numbers for this one appeal. *Callahan v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0152-W-1, Initial Appeal File, Tab 60, Initial Decision.

interfering with her right to religious observation. *Id.* By September 2015, the Acting Assistant Associate Director (AAD) of the FHCC, where the appellant was employed, was actively investigating this equal employment opportunity (EEO) complaint. ID at 3-4. The Acting AAD produced her initial findings to the Director of the FHCC in October 2015, which she revised the following month. ID at 4-6; *Callahan v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0152-W-1, Initial Appeal File (IAF), Tab 12 at 81-82, Tab 49 at 4-17. Most notably, those recommendations included unspecified "corrective action," assigning the appellant a mentor, requiring she undergo training, abolishing her position, and reassigning her to a nonsupervisory position. ID at 4-6; IAF, Tab 12 at 81, Tab 49 at 15-17. At that time, the Director agreed, but asked that Human Resources be looped in to review for appropriateness. IAF, Tab 12 at 81-82.

Although the Acting AAD, the Director, and others contemplated disciplining the appellant as a result of the investigatory findings, the agency had not yet done so by December 2015, when a number of key events occurred. ID at 4-7. During that month, the agency learned that the Social Work Executive (SWE) would soon retire, so the Acting AAD solicited for applicants to take on the role as a collateral duty. ID at 7; IAF, Tab 5 at 89. The appellant applied and interviewed, but the panel ranked her third of the four candidates. ID at 7-8. Also in December 2015, just days after her interview, the appellant engaged in the disclosure and activity that is the subject of the instant reprisal claim. ID at 8-9; IAF, Tab 5 at 87-88.

The appellant disclosed to several agency officials and the Office of Inspector General (OIG) that the recruitment for, and appointment to, the SWE vacancy as a collateral duty assignment violated a particular policy about that position. ID at 8; IAF, Tab 5 at 87-88. She further alleged that the process was improper because, *inter alia,* the departing SWE was involved in the selection of his successor. ID at 8-9. The Acting AAD and Director expressed displeasure

about the appellant's activity, calling it classic bullying and an attempt to ruin reputations. Without making a selection, the agency solicited for applicants a second time by way of an amended vacancy announcement. ID at 9-11; IAF, Tab 5 at 90, Tab 37 at 41-42, 45-47,

The next month, January 2016, agency officials continued to consider whether to impose any discipline on the appellant concerning the EEO complaint of her subordinate. ID at 11. In particular, the Acting Associate Director (AD) expressed some reservations and some disagreement with the Acting AAD's recommendations, particularly the recommendation to abolish the appellant's position. *Id*.; IAF, Tab 48 at 48-51. But consistent with some of the recommendations he did agree with, the Acting AD issued the appellant a "Letter of Expectations"—which generally acknowledged the ongoing investigation, set expectations, and informed her of some steps to follow, such as mandatory training and the assignment of a mentor.[3] ID at 11-12; IAF, Tab 5 at 106-07. Soon thereafter, the appellant underwent a second interview, in concert with the amended SWE announcement, where officials ranked her fourth of four candidates. ID at 12; *see* IAF, Tab 50 at 52.

In March 2016, the Acting AD temporarily reassigned the appellant to a nonsupervisory position—the one the appellant selected of the three the agency offered her—pending the results of the ongoing EEO investigation. ID at 13; IAF, Tab 5 at 117. The agency also changed course, once again, regarding the SWE vacancy. ID at 14; IAF, Tab 6 at 106-07. Consistent with the appellant's complaint, the agency determined that the SWE role should be a full-time supervisory position, rather than a collateral duty. ID at 14; IAF, Tab 50 at 57. Accordingly, the agency conducted interviews a third time, in June 2016, after which the panel ranked the appellant third of four candidates. ID at 14. Ultimately, the agency selected the candidate who had consistently received the

---

[3] The Acting AD also issued an "Expectations of Supervisors and Employees" letter to the appellant, but that letter is of no significant relevance in this decision. ID at 11-12; IAF, Tab 5 at 104.

top ranking in each of the three sets of interviews, i.e., the individual who had, for years, served as the Acting SWE when the SWE was absent. ID at 7, 12, 14.

In September 2016, the appellant accepted a transfer to the GS-11 position she currently holds in Dubuque.[4] ID at 15; IAF, Tab 44 at 33-34. But before relocating to that position and facility, the agency proposed her removal for conduct unbecoming a supervisor, relating to the results of the EEO investigation that started the year before. ID at 14-15; IAF, Tab 10 at 4-5. With the proposal pending, the appellant completed her transfer to Dubuque, and an official at her new facility became the deciding official. ID at 15; IAF, Tab 9 at 283. In January 2017, that official dismissed the charge and all specifications, finding that no discipline was warranted. ID at 15.

After exhausting a complaint with the Office of Special Counsel (OSC), *see, e.g.*, IAF, Tab 5 at 73-86, the appellant filed the instant IRA appeal, IAF, Tab 1. She asserted that her December 2015 disclosure regarding the SWE vacancy was protected, as was her referral of the matter to OIG. *E.g.*, IAF, Tab 55 at 2; RAF, Tab 13 at 4. She further asserted that the agency engaged in retaliatory activities, IAF, Tab 5 at 5-6, which she ultimately identified as the following: (1) the February 2016 "Letter of Expectations"; (2) the March 2016 detail to a nonsupervisory position; (3) the SWE nonselection; and (4) the proposed removal, IAF, Tab 55 at 2; RAF, Tab 13 at 4.

The administrative judge developed the record and held a 3-day hearing before ordering corrective action for the proposed removal, but denying corrective action for the other alleged personnel actions. ID at 2, 40-41. In doing so, she first made a number of credibility findings. ID at 19-26. The administrative judge then concluded that the appellant met her burden of proving that she engaged in activity protected by 5 U.S.C. § 2302(b)(8) and (b)(9), and

---

[4] While all the circumstances surrounding this transfer are not readily apparent to us, and the appellant does argue that her decision to transfer was involuntary, there appears to be no dispute that the appellant applied for and accepted this lower-graded position in a different city. *See* ID at 2, 15, 40-41; IAF, Tab 44 at 33; PFR File, Tab 1 at 9-10.

that protected activity was a contributing factor in the alleged personnel actions. ID at 29-33. Finally, the administrative judge found that the agency failed to prove that it would have proposed the appellant's removal in the absence of her protected activity, ID at 33-35, but did prove that it would have taken each of the other actions at issue, ID at 35-39.

The appellant has filed a petition for review. *Callahan v. Department of Veterans Affairs*, MSPB Docket No. CH-1221-17-0152-W-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response, and the appellant has replied.[5] PFR File, Tabs 3-4.

## ANALYSIS

<u>The administrative judge properly denied the appellant's motion in limine.</u>

Below, the appellant filed a motion in limine, asking that the administrative judge preclude the agency from introducing evidence in support of her proposed removal. IAF, Tab 54 at 4. She argued that because the deciding official did not sustain the underlying specifications, charge, or removal, collateral estoppel precluded the agency from attempting to establish reasons in support of the proposed removal. *Id*. at 4-5. The administrative judge denied the motion. IAF, Tab 55 at 3-4. The appellant later filed the motion a second time, with additional arguments and references to res judicata. RAF, Tab 8 at 4-9. But the

_____

[5] After her reply, the appellant filed a motion to remand the appeal for an addendum proceeding to determine damages, arguing that the lack of a quorum at the Board unduly prejudices her right to due process. PFR File, Tab 5. That motion is denied. As we explain below, in the section of this order entitled, "Notice to the Appellant Regarding Your Right to Request Consequential and/or Compensatory Damages," the appellant may file a motion for such damages with the Central Regional Office. *See* 5 C.F.R. § 1201.204(e)(1) (recognizing that a motion for damages generally must be filed with the regional or field office that issued the initial decision). Separately, we note that the appellant's motion refers to not only consequential and compensatory damages, but also liquidated damages. PFR File, Tab 5 at 4-5. Liquidated damages are not authorized in an IRA appeal such as this. *See* 5 C.F.R. §§ 1201.201(e), 1201.202(d) (recognizing that the Board has the authority to award liquidated damages when an agency willfully violates an appellant's veterans' preference rights under the Veterans Employment Opportunities Act of 1998).

administrative judge denied the motion once more, along with a request for interlocutory appeal.  RAF, Tab 13 at 5-8.

On review, the appellant argues that the administrative judge's denial of her motion "constitute[d] an error of law which directly affected the outcome." PFR File, Tab 1 at 20-24.  She relies on the principles of res judicata and collateral estoppel.  *Id.*  As we explain below, her arguments on this point are unavailing.

While the appellant summarily asserts that the denial of her motion directly affected the outcome of her appeal, PFR File, Tab 1 at 20, that is neither apparent nor explained in her petition.  We note that the proposed removal was the only personnel action for which the administrative judge ordered corrective action. Thus, assuming any error by the administrative judge, the appellant failed to prove that such error was harmful.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (recognizing that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

In any event, collateral estoppel is inapplicable here.  Collateral estoppel, or issue preclusion, is appropriate when:  (1) the issue is identical to that involved in the prior action; (2) the issue was actually litigated in the prior action; (3) the determination on the issue in the prior action was necessary to the resulting judgment; and (4) the party against whom the issue preclusion is sought had a full and fair opportunity to litigate the issue in the prior action.  *McNeil v. Department of Defense*, 100 M.S.P.R. 146, ¶ 15 (2005).  Here, the issue before the agency's deciding official was whether to remove the appellant for the misconduct identified in her proposed removal.  As discussed further below, the issues before the Board include whether the agency would have proposed her removal or taken other personnel actions leading up to her proposed removal in the absence of the appellant's protected activity.  Those are not identical issues, thereby failing to satisfy the first element of collateral estoppel.  Moreover, the

agency's decision to retain the appellant, rather than remove her, does not satisfy the "actually litigated" element. *Cf., Kavaliauskas v. Department of the Treasury*, 120 M.S.P.R. 509, ¶¶ 6-8 (2014) (explaining that a judicial determination is necessary to satisfy the "actually litigated" requirement).

While the appellant argues that Board precedent supports her collateral estoppel arguments, PFR File, Tab 1 at 21-22, it does not. The appellant cites *Payer v. Department of the Army*, 19 M.S.P.R. 534, 536-38 (1984), but the Board in that case affirmed, in part, the application of collateral estoppel to a prior Board proceeding. The appellant then cited *Trueheart v. Department of the Army*, 15 M.S.P.R. 191 (1983).[6] But the Board neither mentioned nor applied the doctrine of collateral estoppel in that case. Finally, the appellant unpersuasively refers, without citation, to a decision by the Administrator of the Drug Enforcement Administration concerning res judicata. PFR File, Tab 1 at 22-23. That doctrine is different than collateral estoppel, but similarly inapplicable. *See generally Peartree v. U.S. Postal Service*, 66 M.S.P.R. 332, 336-38 (1995) (discussing both collateral estoppel and res judicata, and explaining that res judicata applies when, as relevant here, there was a valid final judgment on the merits).

<u>We will not consider alleged personnel actions that the appellant failed to properly raise below.</u>

When the appellant first filed her appeal, the administrative judge issued a jurisdictional order that, *inter alia*, asked the appellant to identify the alleged retaliatory personnel actions. IAF, Tab 3 at 7. In both her initial pleading and her response to the jurisdictional order, she listed seven such actions. IAF, Tab 1 at 11-12, Tab 5 at 5-6. We summarize them as (1) a December 2015 email from the Director; (2) a January 2016 accusation of wrongdoing, which was an apparent reference to the "Expectations of Supervisors and Employees" letter;

---

[6] The appellant's brief contains a typo in the citation to *Trueheart*, but it is evident to which case she was referring. *See* PFR File, Tab 1 at 21.

(3) the February 2016 "Letter of Expectations"; (4) her February 2016 nonselection for the SWE vacancy; (5) the March 2016 detail to a nonsupervisory position; (6) the October 2016 proposed removal; and (7) the forwarding of the proposed removal to the facility to which the appellant transferred. IAF, Tab 1 at 11-12, Tab 5 at 5-6.

In a subsequent prehearing submission, the appellant pared down the alleged retaliatory personnel actions. Rather than the seven previously identified, she listed: (1) the February 2016 "Letter of Expectations"; (2) the removal of her supervisory duties; (3) the March 2016 detail; (4) the SWE nonselection; and (5) the October 2016 proposed removal. IAF, Tab 36 at 6-7.

After the appellant reduced the alleged personnel actions from seven to five, the administrative judge held a prehearing conference and issued an order summarizing the issues. IAF, Tab 55. That order identified four alleged personnel actions: (1) the February 2016 "Letter of Expectations"; (2) the March 2016 detail, effectively removing her supervisory responsibilities; (3) the SWE nonselection; and (4) the October 2016 proposed removal. *Id*. at 2. In short, the administrative judge identified the same five personnel actions the appellant identified, combining the removal of supervisory duties and detail to a nonsupervisory assignment into a single personnel action. *Compare* IAF, Tab 36 at 6-7, *with* IAF, Tab 55 at 2.

The administrative judge's prehearing summary and order invited the parties to identify any necessary corrections, and warned that if there were none, the parties would be bound to the issues identified in the prehearing summary. IAF, Tab 55 at 5. Although the parties responded with arguments about which of the varying postings for the SWE vacancy were properly before the Board, the appellant did not identify any additional alleged retaliatory personnel actions beyond those identified in the prehearing summary. IAF, Tabs 56-57. In fact, the appellant indicated that the administrative judge correctly identified the four alleged personnel actions at issue. IAF, Tab 57 at 5. The administrative judge

later held another prehearing conference and issued another prehearing summary with the same four personnel actions, to which the appellant again submitted no corrections, despite having the opportunity to do so. RAF, Tab 13 at 4, 13.

On review, the appellant has listed the seven alleged retaliatory personnel actions that she first identified, rather than the four adjudicated by the administrative judge. PFR File, Tab 1 at 13-14. She then proceeds to discuss additional alleged actions, including a hostile work environment, involuntary relocation, and the underlying investigation that preceded her proposed removal. PFR File, Tab 1 at 14-17, 19-20. To the extent that the appellant is suggesting we should find that these amounted to additional retaliatory personnel actions for the Board to consider and order corrective action, we will not do so because she failed to properly raise them below. *See Crowe v. Small Business Administration*, 53 M.S.P.R. 631, 634-35 (1992) (explaining that an issue is not properly before the Board when it is not included in the administrative judge's memorandum summarizing the prehearing conference, which states that no other issues will be considered, unless either party objects); *see also Durr v. Department of Veterans Affairs*, 119 M.S.P.R. 195, ¶ 16 n.2 (2013) (applying this principle in the context of a new theory of alleged whistleblower retaliation that was not among the issues considered before the administrative judge, even if that theory had been exhausted before OSC).

We modify the initial decision to find that the Board lacks jurisdiction over the appellant's Letter of Expectations.

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by

5 U.S.C. § 2302(a). *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Id.* If the appellant proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. *Id.* (citing 5 U.S.C. § 1221(e)(1)-(2)).

The administrative judge found that the appellant presented a prima facie case of reprisal for her first alleged personnel action—the Letter of Expectations—without deciding whether that Letter of Expectations constituted a covered personnel action under 5 U.S.C. § 2302(a)(2)(A). ID at 31-32, 37 n.10. We find that the appellant failed to meet her jurisdictional burden regarding the Letter of Expectations because she failed to nonfrivolously allege that it constitutes a cognizable personnel action. Accordingly, we vacate the administrative judge's findings to the extent that they assumed that the Letter of Expectations was a covered personnel action and shifted the burden to the agency regarding that matter.[7] ID at 37-39 & n.10; *see Schmittling v. Department of the Army*, 219 F.3d 1332, 1337 (Fed. Cir. 2000) (finding that the Board may not decide the merits of an IRA appeal if it lacks jurisdiction).

In reaching this conclusion, we recognize that a personnel action includes disciplinary or corrective action. 5 U.S.C. § 2302(a)(2)(A)(iii). An agency may not threaten to take such action in reprisal for whistleblowing. 5 U.S.C. § 2302(b)(8). *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶ 5 (2002). The appellant's Letter of Expectations contained no such threat. In short, the Letter of Expectations indicated that the only subordinate who filed an EEO complaint

---

[7] Because we find that the appellant failed to prove that the Letter of Expectations was a covered personnel action, we need not address her arguments concerning whether the agency proved that it would have issued the letter in the absence of her protected activity. *See* PFR File, Tab 1 at 27.

against the appellant would be temporarily assigned outside her chain of command for administrative matters; instructed the appellant to cease any behavior that could be misconstrued as discriminatory or retaliatory and to complete at least four training requirements over the following 6 months; assigned her a mentor with whom she would have regular meetings; and indicated that she should explore options to enhance communication and she would have bi-weekly progress meetings with her direct supervisor. IAF, Tab 5 at 106-07. The Letter of Expectations did not conclude that the appellant had engaged in wrongdoing, nor did it warn of potential consequences. *Id*.; *see Campo*, 93 M.S.P.R. 1, ¶¶ 6-8 (finding that the Board had jurisdiction over a memorandum of warning when, *inter alia*, the memorandum asserted that the employee had already been insubordinate and threatened that additional insubordination would result in her being charged, disciplined, and possibly removed). Under these circumstances, we find no basis for determining that the appellant established jurisdiction over the Letter of Expectations as a threatened disciplinary or corrective action within the meaning of section 2302.

Section 2302 also defines a "personnel action" to include, *inter alia*, "any [] significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii); *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14. Although the "significant change" personnel action should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id.*, ¶ 16. But again, we find no basis for determining that the appellant established jurisdiction over the Letter of Expectations within the meaning of section 2302. She did not nonfrivolously allege that the Letter of Expectations, or the actions it contemplated, did or would have had a practical

and significant effect on the overall nature and quality of her working conditions, duties, or responsibilities.

<u>The appellant is entitled to corrective action for her proposed removal but no other alleged personnel actions.</u>

When an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing where she must establish a prima facie case of reprisal. *Supra* ¶ 22. If she does so, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. *Id*.

To determine whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of protected activity, the Board generally will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency's officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in protected activity but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board must consider all pertinent record evidence in making this determination. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 11 (2010). Rather, the Board will weigh the factors together to determine if the evidence is clear and convincing as a whole. *Id*.

The administrative judge found that the appellant met her burden of presenting a prima facie case of reprisal for each of the four alleged personnel actions before us—the Letter of Expectations, the nonsupervisory detail, the SWE nonselection, and the proposed removal. ID at 29-33. She then found that the agency failed to prove that it would have proposed the appellant's removal in the

absence of her protected activity—a protected disclosure and her complaint to OIG—but did prove that it would have taken the other actions at issue, ID at 33-39.

We discern no basis for disturbing the initial decision and ordering corrective action for anything other than the appellant's proposed removal.

*The proposed removal*

Although neither party has disputed the administrative judge's finding that the agency failed to prove it would have proposed the appellant's removal absent her protected activity, we make the following observations to the extent that they are relevant for purposes of those personnel actions that are disputed. First, the administrative judge recognized that nonwhistleblowers implicated in the EEO complaint and investigation appeared to receive favorable treatment when compared to the appellant, because they were not disciplined. ID at 33-34. Second, she recognized that two individuals in particular—the Acting AAD and the Director—had a strong motive to retaliate against the appellant, because her protected activity directly challenged their decision-making, while the Acting AD and others were at least aware of the protected activity. ID at 9-10, 21, 34, 39; *see, e.g.,* IAF, Tab 5 at 102-03, Tab 37 at 46-47. To illustrate the point, the record includes emails in which the Director called the appellant's disclosure unfounded and concerning, and asked why the appellant would "want to ruin [his] reputation." IAF, Tab 5 at 102-03. Emails from the Acting AAD called the appellant's disclosure a "false allegation" and "classic bullying." IAF, Tab 37 at 45-46.

*The appellant's nonsupervisory detail assignment*

Turning to the nonsupervisory detail, to which the agency assigned the appellant "pending the outcome of an ongoing investigation" into the allegations of discrimination against her, the administrative judge determined that despite the aforementioned motive to retaliate, the evidence in support of the detail

assignment was also strong, and the agency met its burden. ID at 37-39; *see* IAF, Tab 5 at 117. She recognized that because of the EEO complaint against the appellant, the agency had a responsibility to investigate the matter. ID at 37. And based on the early results of that investigation, the Acting AAD recommended that the appellant be reassigned to a nonsupervisory position, to which the Director agreed, but requested Human Resources review for appropriateness before proceeding. ID at 6, 37-38; *see* IAF, Tab 12 at 81-82. Most notably, this occurred in November 2015, prior to the appellant's protected activity and any motive to retaliate, notwithstanding that the appellant's actual reassignment to the nonsupervisory detail occurred after her protected activity and once these officials had a strong motive to retaliate.[8] ID at 37-38; IAF, Tab 5 at 87-88.

While the appellant highlighted that her detail to the nonsupervisory position was not effectuated until after her protected activity, the administrative judge found the delay inconsequential. She concluded that the delay between approval and effectuation—with the appellant's protected activity falling in between—was reasonably explained by the deliberation of relevant parties and other circumstances at hand, rather than some change in circumstance attributable to parties' retaliatory motive. ID at 38-39. Most significantly, placing the appellant in the nonsupervisory detail was far less pressing until just days before

---

[8] We considered whether this timing requires that we overturn the administrative judge's findings regarding the nonsupervisory detail assignment and the contributing factor requirement, but find that it does not. *See generally Sherman v. Department of Homeland Security*, 122 M.S.P.R. 644, ¶ 9 (2015) (finding that an appellant presented nonfrivolous allegations that his protected activity was a contributing factor in his performance appraisal when relevant officials learned of that protected activity after first issuing the performance appraisal, but before completing the performance appraisal months later). While the Acting AAD and Director did not yet have a motive to retaliate when they first recommended removing the appellant's supervisory duties, they did have a motive to retaliate throughout much of the subsequent deliberations with other relevant parties about the same, including the Acting AD, who placed the appellant in the nonsupervisory detail. *See, e.g.,* IAF, Tab 5 at 117, Tab 48 at 48-51, Tab 50 at 37.

the agency did so because the appellant's subordinate who filed the EEO complaint against the appellant was on maternity leave from November 2015 to March 2016. ID at 6, 13, 39.

We find the appellant's arguments on review unpersuasive and decline to disturb the administrative judge's findings regarding the detail.

*Social Work Executive nonselection*

The administrative judge recognized that several officials knew of the appellant's protected activity but two in particular—the Acting AAD and the Director—had a strong motive to retaliate against her. ID at 9-10, 21, 34, 39; *see, e.g.*, IAF, Tab 5 at 102-03, Tab 37 at 46-47. The former solicited for the SWE vacancy and was otherwise involved in the associated announcements, while the latter was the selecting official for the SWE vacancy. *See* ID at 7, 36; *see also, e.g.*, IAF, Tab 5 at 89-90, Tab 38 at 14-15. Yet, the administrative judge concluded that the agency met its burden of proving that the appellant's nonselection would have occurred in the absence of her protected activity. ID at 35-36.

The administrative judge noted that because the SWE vacancy was posted three different times to account for multiple changes to the announcement, there were three different interview panels. ID at 36. She recognized that with each, including one that convened prior to the appellant's protected activity, the panel ranked the same individual first, while ranking the appellant either third or fourth. *Id*. The selecting official simply followed the recommendation of the interview panels, selecting that top-ranked individual for the SWE position over the appellant and others. *Id*. The administrative judge further noted that two individuals—one from each of the interview panels that convened after the appellant's protected activity—testified regarding the reasons for their rankings, and the administrative judge found their testimony credible. ID at 25, 36. As previously discussed, the candidate they consistently ranked first had served as the acting SWE over the years prior. ID at 7; *see, e.g.*, IAF, Tab 9 at 101-03.

Here, the administrative judge found that the agency met its burden that it would have taken the same action in the absence of the appellant's protected activity. On review, the appellant has not presented any persuasive argument to the contrary. She has not, for example, directed us to any evidence supporting her selection over the candidate who was selected and consistently ranked the highest of all candidates, both before and after the appellant's protected activity. In fact, the appellant's arguments on review neither discuss nor reference either her own qualifications or those of the selected candidate.

The administrative judge did not err by failing to implement the referral provision of 5 U.S.C. § 1221(f)(3).

Section 1221(f)(3) of Title 5 of the U.S. Code provides as follows: "[i]f, based on evidence presented to it under this section, the [Board] determines that there is reason to believe that a current employee may have committed a prohibited personnel practice, the Board shall refer the matter to [OSC]" for appropriate action. 5 U.S.C. § 1221(f)(3). On review, the appellant argues that the administrative judge failed to comply with that provision. PFR File, Tab 1 at 17-18. We disagree.

The Board refers matters to OSC pursuant to section 1221(f)(3) after a decision has become final. *See* 5 C.F.R. § 1201.113(f). Therefore, had the appellant not filed a petition for review, the initial decision would have become final in July 2018, and the matter would have then been referred to OSC. *See* ID at 42. But because the appellant did file a petition for review, the initial decision did not become final at that time. Instead, the instant final order renders the matter ripe, and the Board will now fulfill its obligation under section 1221(f)(3).

## ORDER

We ORDER the agency to purge all copies of the appellant's proposed removal from agency records. *See Kerr v. National Endowment for the Arts,*

726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other

reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the

EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of

review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

*Jennifer Everling*

_____

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.